**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

**LOREN MITCHELL**
**MAGISTRATE IN CHANCERY**

**LEONARD L. WILLIAMS JUSTICE CENTER**
**500 NORTH KING STREET, SUITE 11400**
**WILMINGTON, DE 19801-3734**

July 28, 2026

John W. Shaw, Esquire
Shaw Keller LLP
1105 N. Market Street, Suite 200
Wilmington, DE 19801

Martin S. Lesser, Esquire
Michele Sherretta Budiack, Esquire
Tammy L. Mercer, Esquire
Young Conway Stargatt & Taylor LLP
1000 N. King Street
Wilmington, DE 19801

Brian F. Morris, Esquire
Morgan Lewis & Bockius LLP
1201 Market Street, Suite 2201
Wilmington, DE 19801

Joseph C. Schoell, Esquire
Faegre Drinker Biddle & Reath LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801

Evan O. Williford, Esquire
The Williford Firm, LLC
1007 N. Orange Street, Suite 235
Wilmington, DE 19801

John D. Hendershot, Esquire
Gregrory P. Williams, Esquire
Black Rohrbacher, Esquire
Rudolf Koch, Esquire
Andrew Milam, Esquire
Richards Layton & Finger, P.A.
920 N. King Street
Wilmington, DE 19801

> Re: Intel *Corp. v. Nvidia Corp.*,
> C.A. No. 4373-LM

Dear Counsel:

The Court addresses renewed motions for continued confidential treatment

under Court of Chancery Rule 5.1. Intel seeks confidential treatment for three

1

categories of documents. NVIDIA seeks confidential treatment for commercially sensitive materials and confidential third-party information. For the reasons explained below, the Court **GRANTS** the motions.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This action arose from a dispute between Intel Corporation ("Intel") and NVIDIA Corporation ("NVIDIA") regarding the scope of licensing rights under agreements governing certain chipset technologies.[1] The central question concerned whether NVIDIA was licensed to build chipsets compatible with Intel's Nehalem-class processors.[2] The parties litigated the matter extensively, filing numerous pleadings, discovery materials, expert submissions, and pretrial briefs.[3]

Before trial, the parties resolved the dispute and dismissed the action with prejudice.[4] The Court did not issue a merits decision resolving the underlying licensing question. Prior to the dismissal, the Court ruled on two motions related to this case: NVIDIA's Motion to Compel and the State of New York's Motion to Intervene and for Clarifications or Modifications of the Protective Order.[5]

---

[1] *See* Docket Instrument ("D.I.") 1 ¶¶ 1, 3, 19–20; D.I. 539 ¶ 11.

[2] *See* D.I. 1 at 7; ¶ 31.

[3] There were over 440 docket instruments filed with the Court prior to the granted Stipulation and Order of Dismissal.

[4] *See* D.I. 442.

[5] *See* D.I. 250; D.I. 276; D.I. 465; D.I. 466.

During and after the litigation, the Court entered multiple confidentiality orders under Rule 5.1, with the first order on May 16, 2009.[6] As confidential treatment was set to expire three years following the date of final disposition, the parties filed motions for continued confidential treatment, which were extended in 2014, 2016, 2018, and 2020.[7] The pending motions to extend confidential treatment were filed in August 2023.[8]

In the pending motions, Intel seeks continued confidential treatment for three categories of documents: documents revealing internal evaluations of licenses and sensitive or proprietary business strategies; documents revealing confidential technical information; and documents containing allegations regarding Intel's business strategies.[9] NVIDIA, in turn, seeks continued confidential treatment for documents containing commercially sensitive and proprietary information, including trade secrets and product development efforts, confidential negotiations—such as specific terms in agreements and prior negotiations involving a third party—and the identification of employees assigned to proprietary projects.[10] NVIDIA also

---

[6] *See* D.I. 45.

[7] D.I. 467; D.I. 468; D.I. 471; D.I. 472; D.I. 478; D.I. 479; D.I. 482; D.I. 502; D.I. 503; D.I. 508; D.I. 509; D.I. 512; D.I. 513; D.I. 519; D.I. 521; D.I. 529; D.I. 531; D.I. 537; D.I. 538.

[8] D.I. 539; D.I. 542.

[9] D.I. 539 ¶¶ 21–26.

[10] D.I. 542 at 10–19.

seeks to maintain under seal documents containing confidential third-party information.[11]

The motions were reassigned to me on July 17, 2025.[12] This is my Final Report.

## II. LEGAL STANDARD

Under Delaware law, court proceedings are matters of public record.[13] The public has a "right of access to information about judicial proceedings", and "most information presented to the Court should be made available to the public."[14] However, court proceedings may contain confidential information, and so public access to filed documents may be limited when those documents contain such confidential information.[15] Court of Chancery Rule 5.1(h) provides that confidential treatment expires three years after final disposition unless the proponent demonstrates that "the particularized harm from public disclosure . . . clearly outweighs the public interest in access to Court records."[16] The movant bears the

---

[11] D.I. 542 at 19–23.

[12] D.I. 549.

[13] Ct. Ch. R. 5.1(a)(1).

[14] *Sequoia Presidential Yacht Gp. LLC v. FE P'rs LLC*, 2013 WL 3724946, at *2 (Del. Ch. July 15, 2013).

[15] Ct. Ch. R. 5.1(b)(1).

[16] Ct. Ch. R. 5.1(h), (h)(2)(A).

burden of "persuading the Court that confidential treatment is warranted."[17] The harm must be particularized, and the movant must proffer tangible evidence of concrete damage.[18] Generalized assertions of economic harm or reputational concern are not enough.[19]

When considering whether to grant continued confidentiality, the Court must "balance[e] … the public interest against the harm that public disclosure might entail with respect to sensitive nonpublic information."[20] The public interest is strongest when materials influence a judicial decision, particularly at trial.[21] Still, even where a case settles, the public retains an interest in court proceedings.[22] Settlement diminishes, but does not eliminate, the public interest.

---

[17] Ct. Ch. R. 5.1(g)(6)(D); Leo *Invs. Hong Kong Ltd. v. Tomales Bay Cap. Anduril III, L.P.*, 349 A.3d 635, 650 (Del. Ch. 2025).

[18] *Leo Invs. Hong Kong Ltd.*, 349 A.3d at 650 (citing *In re Oxbow Carbon*, 2016 WL 7323443, at *2 (Del. Ch. Dec. 15, 2016)); Ct. Ch. R. 5.1(h)(2)(A).

[19] Ct. Ch. R. 5.1(h)(2)(A); Leo *Invs. Hong Kong Ltd.*, 349 A.3d at 650 ("The harm cannot be general but must be particularized . . ." (quoting *In re Oxbow Carbon*, 2016 WL 7323443, at *2 (Del. Ch. Dec. 15, 2016)).

[20] *Leo Invs. Hong Kong Ltd.*, 349 A.3d at 650 (quoting *In re Oxbow Carbon*, 2016 WL 7323443, at *2 (Del. Ch. Dec. 15, 2016)).

[21] *Id.*

[22] *Sequoia Presidential Yacht Gp. LLC*, 2013 WL 3724946, at *3 ("That a case ultimately settles . . . does not suggest that the public has no interest in the actions in the Court *before* that arrangement was reached.").

The Court also considers whether redactions would impair the public's basic understanding of the dispute.[23] When sealed material represents "the nature of the dispute itself," disclosure generally prevails.[24] When material concerns collateral business details unnecessary to understanding the litigation, the balance may favor continued sealing.[25]

## III. ANALYSIS

### A. The Strength of the Public Interest

The public interest is reduced here because the Court did not issue a merits decision and the matter did not proceed to trial.[26] The documents at issue appear primarily in exhibits and discovery materials, and did not influence the two merits decisions the Court did make, on NVIDIA's Motion to Compel and the State of New

---

[23] *Al Jazeera Am., LLC v. AT & T Servs., Inc.*, 2013 WL 5614284, at *5 (Del. Ch. Oct. 14, 2013).

[24] *Id*. (". . . when sensitive information that the parties wish to keep confidential directly impacts the public's basic knowledge of particular court proceedings – where, as here, the supposedly confidential information represents the nature of the dispute itself – the interest of the public in accessing this information outweighs the economic harm to the parties that disclosure may cause.").

[25] *Id*. ("For a price term, the potential economic harm caused by disclosure outweighs the public's interest in accessing that information, largely because knowledge about price terms does not impinge on the public's understanding of the disputes before this Court.").

[26] *See Leo Invs. Hong Kong Ltd.*, 349 A.3d at 650 (If the public interest is strongest when materials are relied on or influence a judicial decision, when documents are not relied on or influence a judicial decision the public interest must be diminished in comparison.); *see* D.I. 442 (the parties stipulated and the Court dismissed the action with prejudice prior to trial).

York's Motion to Intervene and for Clarifications or Modifications of the Protective Order.[27]

The underlying litigation centered on whether NVIDIA possessed licensing rights for certain chipsets.[28] The public filings—including the complaint and answer—describe that dispute in sufficient detail to apprise the public of the parties' dispute and arguments.[29] Continued redaction will not obscure the public's understanding of the case's nature or outcome, as the dispute has been described in sufficient detail in the public filings.

## B. Intel's Motion

### 1. Internal Evaluations of Licenses and Proprietary Business Strategies

Intel seeks to maintain redactions over internal communications, analyses, and strategic assessments relating to licensing negotiations and evaluation

---

[27] *See* D.I. 276; D.I. 465; D.I. 466.

[28] *See* D.I. 1 ¶ 31.

[29] *See generally* D.I. 9; *D.I.* 31; D.I. 526; D.I. 527 (These documents provide sufficient information, even in their redacted states, for the public to understand the nature of the dispute and have a basic understanding of the proceedings.).

methodologies.[30]  Intel has requested the Court to maintain redactions of eight full documents[31] and seventeen partially redacted documents[32] under this reasoning.

The Court has reviewed the proposed redactions and believes the materials are not necessary to understand the nature or outcome of the dispute.  In examining the request for continued confidential treatment, the Court considered the public interest in access against the particularized harm that would result from disclosure.

Intel asserts that the documents reveal negotiation strategies and frameworks that it continues to use when evaluating potential licensing agreements with other companies, and also reveal confidential license terms with nonparties, sensitive financial analyses, and internal Intel business strategies that influence Intel's business decisions to this day.[33]  Disclosure would, according to Intel, disadvantage it in future negotiations with competitors and counterparties.[34]  Intel supports this assertion with a sworn affidavit explaining that disclosure would provide leverage to counterparties and competitors in future licensing discussions.[35]

---

[30]  D.I. 539 ¶¶ 22–24.

[31]  *See* D.I. 539, Aff. of Gregory H. Lantier, ¶ 16; D.I. 487, Exs. 2, 6–9; D.I. 435, Exs. 1–2, 4.

[32]  *See* D.I. 539, Aff. of Gregory H. Lantier, ¶ 16; D.I. 522; D.I. 483, Exs. 3, 8; D.I. 494; D.I. 524; D.I. 488, Ex. 10; D.I. 489, Ex. 223; D.I.496; D.I. 497, Exs. 4, 9; D.I. 490, Exs. A, E; D.I. 498; D.I. 526; D.I. 527; D.I. 499.

[33]  D.I. 539 ¶¶ 22–23; D.I. 539, Aff. of Gregory H. Lantier, ¶¶10–12.

[34]  D.I. 539 ¶¶ 22–23.

[35]  *See* D.I. 539, Aff. of Gregory H. Lantier, ¶¶ 10–12.

The harm alleged by Intel is sufficiently particularized. Intel identifies a specific competitive disadvantage in future negotiations resulting from the underlying information being publicly available.[36] The affidavit supplies tangible evidentiary support of particularized competitive harm.[37]

Although Intel cannot quantify future negotiation losses with precision, this Court has not required mathematical certainty related to these allegations previously, and the Court sees no reason to depart from its previous decisions now.[38] Due to the amorphous nature of future negotiations, it would be wrong to require mathematical certainty when a particularized harm will occur, even if Intel cannot quantify that harm with a dollar value.

Balancing the diminished public interest against the identified harms, Intel has met its burden. The particularized harm that would result from disclosing information related to Intel's internal license evaluation business strategies outweighs the public's interest in the proceedings, as the information is unnecessary for the public to understand the proceedings, outcome, and main controversy of the

---

[36] D.I. 539 ¶¶ 22–23.

[37] *See* D.I. 539, Aff. of Gregory H. Lantier, ¶¶ 10–12; see generally *Al Jazeera Am., LLC*, 2013 WL 5614284, at *4 n.30 (The Court has previously accepted affidavits as sufficiently tangible evidence of potential harm.).

[38] *Compare* D.I. 512, Aff. of Gregory H. Lantier, ¶¶ 8–10, *with* D.I. 539, Aff. of Gregory H. Lantier, ¶¶ 10–12 (the allegations of harm are substantially similar, and the Court granted confidential treatment as a result of the first affidavit); see generally D.I. 519 (granting confidential treatment).

litigation. The Court therefore grants continued confidential treatment for documents revealing Intel's internal licensing evaluations and proprietary business strategies.

### 2. Confidential Technical Information

Intel also seeks to maintain sealing over documents containing proprietary technical details, including references to unreleased products.[39] Intel seeks to maintain two documents as fully redacted[40] and one document as partially redacted[41] pursuant to this reasoning.

The Court examines whether continued confidentiality is proper under this reasoning. Disclosure of the confidential technical information would not materially enhance public understanding of the proceedings. Intel's affidavit explains that nonpublic technical details regarding processes, products, and strategies remain confidential and their disclosure would erode competitive advantage. Their continued absence from the public eye does not prevent the public from understanding the basics at the heart of the underlying litigation. The public does not require information about Intel's proprietary technology, and especially not information about products yet unreleased or unrevealed, in order to understand that

---

[39] *See* D.I. 539 ¶ 25.

[40] *See* D.I. 539, Aff. of Gregory H. Lantier, ¶ 16; D.I. 487, Ex. 7;  D.I. 435, Ex. 4.

[41] *See* D.I. 539, Aff. of Gregory H. Lantier, ¶ 16; D.I. 483, Ex. 3.

Intel and NVIDIA stipulated to end the proceedings and were clashing about the definition of certain sections of the licensing agreement.

Intel asserts that competitors would derive value from access to technical descriptions found in the confidential documents.[42] Its affidavit states that such information provides Intel a competitive advantage and includes references to unreleased products.[43] The affidavit explains that much of this information remains proprietary and confidential, despite the litigation having concluded over ten years ago.[44] Should information regarding Intel's "processes, products, and strategies" cease to be confidential, Intel may lose what it considers to be a substantial competitive advantage.[45] This would likely result in economic harm.

Trade secret and proprietary information traditionally warrants protection under Rule 5.1.[46] Intel's affidavit, while not exhaustive, identifies particularized competitive harms, explaining that competitors could exploit this information to

---

[42] *See* D.I. 539 ¶ 25.

[43] D.I. 539, Aff. of Gregory H. Lantier, ¶¶ 13–14.

[44] D.I. 539, Aff. of Gregory H. Lantier, ¶ 14.

[45] *Id.* ¶ 13.

[46] *See* Ct. Ch. R. 5.1(b)(3)(A) (listing "trade secrets" as included in confidential information that the Court may limit access to); *In re Boeing Co. Deriv. Litig.*, 2021 WL 392851, at *3 (Del. Ch. Feb. 1, 2021) ("A party seeking confidential treatment based on harm to its business relationships with customers 'must point to specific information like trade secrets . . . that is not in the public mix and, if disclosed, will cause clearly identified harm.'" (quoting *Manhattan Telecomms. Corp. v. Granite Telecomms., LLC*, 2020 WL 6799122, at *3 (Del. Ch. Nov. 19, 2020)).

accelerate development or adjust competitive strategies, to the detriment of Intel.[47]

That harm clearly outweighs the modest public interest in materials that played no role in the Court's adjudication and do not define the dispute's nature.

Therefore, continued confidential treatment is granted for this category.

### 3. Allegations Regarding Intel's Business Strategies

Intel seeks to maintain confidentiality over materials containing specific allegations that Intel steered customers away from NVIDIA products, including the identities of customers and details of alleged incidents.[48] Intel seeks to maintain two documents as fully redacted[49] and twenty-two documents as partially redacted[50] pursuant to this reasoning.

The general existence of the allegation that Intel engaged in certain competitive practices appeared in public filings.[51] Intel stated in its public motion that ". . . NVIDIA's claim that Intel 'steered' customers away from NVIDIA was contained in the public version of NVIDIA's counterclaim . . . ."[52] Continued

---

[47] D.I. 539, Aff. of Gregory H. Lantier, ¶¶ 13–14.

[48] *See* D.I. 539 ¶ 26.

[49] *See* D.I. 539, Aff. of Gregory H. Lantier, ¶ 16; D.I. 484, Ex. S; D.I. 490, Ex. H.

[50] *See* D.I. 539, Aff. of Gregory H. Lantier, ¶ 16; D.I. 523; D.I. 485, Ex. F; D.I. 486, Ex. P; D.I. 484, Ex. R; D.I. 524; D.I. 488, Exs. 11, 13–16; D.I. 489, Exs. 17–18; D.I. 490, Ex. E; D.I. 497, Ex. 3; D.I. 526; D.I. 527; D.I. 535; D.I. 517; D.I. 510; D.I. 473.

[51] *See* D.I. 31 at 28; D.I. 539 ¶ 26.

[52] *See* D.I. 539 ¶ 26; D.I. 31 at 28.

redaction does not conceal that theory. Thus, the general allegation is not subject to continued confidential treatment, as the knowledge of the general allegation is no longer kept confidential and is available to the public through the partially redacted filings.[53]

Intel specifically requests continued sealing of the specific incidents and customer identities.[54] "[T]he identity of customers has long been recognized to be a trade secret."[55] "But even against that backdrop, [a movant] still must demonstrate that the public identification of [the company's] customers would cause particularized harm."[56] Mere speculation that a company "could be harmed" or that the identities of customers "could be used to put [a company] at a competitive disadvantage" is insufficient to support a finding of particularized harm.[57]

Delaware precedent recognizes that customer identities may constitute protectable commercial information.[58] Intel asserts in its affidavit that disclosure

---

[53] *See* Ct. Ch. R. 5.1(b)(2)(A)–(B) (Information must be maintained confidentially and not be publicly available in order for the Court to limit public access to it as confidential information.).

[54] D.I. 539 ¶ 26.

[55] *In re Boeing*, 2021 WL 392851, at *3 (quoting *Phila. Gear Corp. v. Power Transmission Servs., Inc.*, 1991 WL 29957, at *3 (Del. Ch. Mar. 6, 1991)).

[56] *Id*. (citing *Manhattan Telecomms. Corp. v. Granite Telecomms., LLC*, 2020 WL 6799122, at *3 (Del. Ch. Nov. 19, 2020)).

[57] *Id*.

[58] *Id*. (quoting *Phila. Gear Corp. v. Power Transmission Servs., Inc.*, 1991 WL 29957, at *3 (Del. Ch. Mar. 6, 1991)).

tied to specific customers could damage its existing and prospective commercial relationships and reputation.[59] While reputational harm alone may not suffice, harm to ongoing business relationships with identified customers may constitute a particularized injury.[60] The public does not require the names of nonparty customers to understand the legal dispute here, particularly because the public interest in identifying nonparty customers is minimal.

Therefore, the Court grants Intel's motion as to the documents containing specific allegations regarding Intel's business strategy, but not to the general allegation already made public.

### C. NVIDIA's Motion

#### 1. Commercially Sensitive and Proprietary Information

##### a. Trade Secrets and Product Development Efforts

NVIDIA seeks continued protection for references to product development strategies and internal technical efforts.[61] NVIDIA claims these documents should

---

[59] D.I. 539 ¶ 26; D.I. 539, Aff. of Gregory H. Lantier, ¶ 15.

[60] *In re Boeing*, 2021 WL 392851, at *3 ("A party seeking confidential treatment based on harm to its business relationships with customers 'must point to specific information like trade secrets . . . that is not in the public mix and, if disclosed, will cause clearly identified harm."); *see also Quantum Tech. P'rs IV, L.P. v. Ploom, Inc.*, 2014 WL 2156622, at *6–7 (Del. Ch. May 14, 2014) (granting a motion to redact by finding that the harm to come from disclosure of information about a contractual relationship with a non-party that is sensitive to a company's ongoing operations outweighed the public's interest in that information).

[61] D.I. 546 at 13.

be protected as they relate to trade secrets and proprietary information.[62]  It seeks

continued confidential treatment for two documents under this reasoning.[63]

Trade secrets lie at the core of Rule 5.1's protection.[64]  The definition of a

trade secret also applies to proprietary information, as the Court has previously

explained that a trade secret is information that "'(a) derives independent economic

value . . . from not being generally known to, and not being readily ascertainable by

proper means by, other persons who can obtain economic value from its disclosure

or use' and (b) is the subject of reasonable efforts to maintain its secrecy."[65]

Proprietary information is also protected by Rule 5.1, assuming that the harm

outweighs the public interest in the information, considering that it is by definition

maintained confidentially, is not otherwise publicly available, and that public access

to it would cause particularized harm to whoever keeps the information

confidential.[66]

NVIDIA asserts that disclosure would undermine development strategies and

damage its competitive standing.[67]  Its affidavit explains that maintaining secrecy

---

[62] *Id.*

[63] D.I. 547, Aff. of Marlon Alvarado, ¶ 14; D.I. 300, Ex. 5;  D.I. 432.

[64] *See* Ct. Ch. R. 5.1(b)(2)–(3).

[65] *Heron Bay Prop. Owners Ass'n, Inc. v. CooterSunrise, LLC*, 2013 WL 3871432, at *16 (Del. Ch. June 27, 2013) (quoting 6 *Del. C.* § 2001(4)(a)–(b)).

[66] *See* Ct. Ch. R. 5.1(b)(2)(A)–(D).

[67] D.I. 546 at 13.

over product development plans remains critical to preserving competitive advantage in a highly competitive market.[68] The affidavit continues, explaining that the development of "[n]ew, innovative products . . . take significant time and resources and result from [NVIDIA's] considered business strategy and confidential assessment of the graphics industry", an industry that it describes as "fiercely-competitive."[69] Disclosure of nonpublic development efforts could allow competitors to adjust strategy without incurring equivalent research costs, damaging NVIDIA's competitive standing or relationships in its markets.[70] Such competitive disadvantage and further damage constitutes particularized competitive harm.[71]

The Court finds that the public interest in the documents containing NVIDIA's trade secrets and proprietary information is outweighed by the particularized harm. Thus, the Court grants continued confidential treatment for references to product development strategies and internal technical efforts.

---

[68] D.I. 547, Aff. of Marlon Alvarado, ¶¶ 12–13.

[69] *Id.* ¶ 12.

[70] *Id.* ¶ 12.

[71] *See Heron Bay Prop. Owners Ass'n, Inc.*, 2013 WL 3871432, at 15–16 (Del. Ch. June 27, 2013) (finding that placing a company at a competitive disadvantage and the ability to capitalize on a company's development without expending similar resources may constitute a particularized harm under Rule 5.1); *see also In re Boeing*, 2021 WL 392851, at *3 (explaining that potential harm to business relationships may qualify information for Rule 5.1 protection).

### b. Confidential Negotiations

NVIDIA seeks to keep sealed descriptions of negotiation positions, specific contractual terms, and discussions involving a third party.[72] NVIDIA asks the Court to maintain the confidentiality of six documents pursuant to this reason.[73] These materials concern bargaining history and particular negotiation stances, not the essential legal claims. NVIDIA asserts that disclosure would provide counterparties and competitors insight into recurring negotiation strategies and pricing positions.[74] NVIDIA also claims that harm may come to the third parties involved in these negotiations and discussions, as it would give other industry players unfair insight into the third parties' negotiation strategies.[75] These harms are not generalized; they are particular enough. Licensing negotiations recur in this industry, and revealing historical bargaining positions could affect the parties' leverage in future negotiations.[76] NVIDIA supports this assertion with affidavit testimony.[77] Although

---

[72] *See* D.I. 546 at 14–17.

[73] D.I. 547, Aff. of Marlon Alvarado, ¶ 14; D.I. 140, Exs. 1–2; D.I. 289, Ex. E; D.I. 300, Ex. 10; D.I. 432; D.I. 434.

[74] D.I. 546 at 14–15.

[75] D.I. 546 at 14.

[76] D.I. 547, Aff. of Marlon Alvarado, ¶¶ 10–11.

[77] *Id*.

the affidavit does not quantify damages, it identifies concrete disadvantages in future negotiations.[78]

The Court finds that the particularized harms to NVIDIA and the nonparties outweigh the public interest here. It is unfair for non-parties' confidential information and bargaining positions to be unveiled to the public as a result of a proceeding that they were not involved when the public interest is outweighed by the potential harm to those third parties.[79] For that reason, the Court grants NVIDIA's motion as to the documents containing confidential negotiations with NVIDIA and third parties.

### c. Identification of Employees Assigned to Proprietary Projects

NVIDIA also seeks to maintain redactions identifying specific employees and team compositions, as some documents identify NVIDIA employees assigned to develop the chipsets at issue in the litigation.[80] Specifically, it seeks to maintain the

---

[78] *Id*.

[79] *See In re Nat'l City Corp. S'Holders Litig*, 2009 WL 1653536, at \*2 (Del. Ch. June 5, 2009) (concluding that protecting third party financial institutions from the public dissemination of their nonpublic financial information is "precisely the type of information that Rule [5.1] seeks to protect); *see also In re Boeing*, 2021 WL 392851, at \*3 (explaining that the public interest is outweighed by the harm caused by "unmasking" sexual assault whistleblower employees, as they are "nonparties whose interests [were] not presently before the Court"), *accord Horres v. Chick-fil-A, Inc.*, 2013 WL 1223605, at \*3 (Del. Ch. Mar. 27, 2013).

[80] D.I. 546 at 17–19.

confidential treatment of ten documents that contain this information.[81]   The identities of non-party employees are not "categorically confidential", and for the Court to grant confidential treatment, the movant must identify a justification or reasoning.[82]

Here, NVIDIA has identified particularized harm that will result from unsealing the documents, which provides sufficient basis for continued confidential treatment.  NVIDIA asserts that disclosure could facilitate targeted recruitment by competitors and provide those competitors with "valuable insight into NVIDIA's management practices."[83]   These employees would be specifically targeted by competitors, as NVIDIA is involved "in the market for top-tier employees with specialized knowledge relevant to NVIDIA's products and business" and in that market it is commonplace for competitors to hire a company's employees when the competitor "becomes aware that those employees possess skills, training or know-how that may be useful."[84]   NVIDIA's affidavit supports these concerns.[85]

[81]  D.I. 547, Aff. of Marlon Alvarado, ¶ 14; D.I. 215; D.I. 221; D.I. 289, Exs. E–F, P, R; D.I. 300, Exs. 5, 16–17; D.I. 321, Ex. E.

[82]  *Twitter, Inc. v. Musk*, 2024 WL 4441869, at *3.

[83]  D.I. 546 at 17–18.

[84]  D.I. 546 at 19.

[85]  D.I. 547, Aff. of Marlon Alvarado, ¶¶ 8–9.

The identities of individual, nonparty employees add little to public understanding of licensing rights. Balancing the minimal public interest against the particularized competitive harm, continued confidential treatment is granted for this subcategory.

## 2. Confidential Third-Party Information

NVIDIA seeks continued sealing of interrogatory responses and exhibits reflecting confidential customer statements concerning alleged conduct by Intel.[86] For this category, NVIDIA asks the Court to maintain redactions present in twelve documents.[87] The third parties had disclosed the information to NVIDIA in strict confidence.[88] When NVIDIA filed their discovery responses and other documents containing this information, they did so under seal and designated them as "Highly Confidential" to prevent the public and Intel's business personnel from acquiring specific information about and the identities of the third-party customers.[89] Delaware precedent recognizes that third-party customer identities may constitute protectable commercial information and has been recognized as a trade secret.[90]

---

[86] D.I. 546 at 19–23.

[87] D.I. 547, Aff. of Marlon Alvarado, ¶ 14; D.I. 221; D.I. 289, Exs. E–F, P, R–S; D.I. 300, Exs. 15, 16–18; D.I. 321, Ex. E; D.I. 434.

[88] D.I. 546 at 21.

[89] D.I. 546 at 21.

[90] *See In re Boeing*, 2021 WL 392851, at *3 (quoting *Phila. Gear Corp. v. Power Transmission Servs., Inc.*, 1991 WL 29957, at *3 (Del. Ch. Mar. 6, 1991)); see *also Horres v. Chick-fil-A, Inc.*, 2013 WL 1223605, at *3 (Del. Ch. Mar. 27, 2013).

This is especially true when the sealed information consists of confidential information belonging to third parties. Even so, the movant must still demonstrate that the public having access to the identities of customers would cause particularized harm.[91]

NVIDIA claims that both it and the third-party customers would be harmed if the third-party customers' "confidential statements about . . . Intel, were disseminated either to Intel or to the general public."[92] NVIDIA's affidavit explains that disclosure would damage NVIDIA's customer relationships, NVIDIA's reputation as a trustworthy industry participant, and harm the customers' relationships with Intel.[93] Should these communications be made available to the public, NVIDIA stands to lose the reputation it has garnered that it believes to be critical to its success.[94] The confidential information is also important to NVIDIA's customers, and they would likely stand to lose their reputation as well if their documents were unsealed.[95] Courts routinely protect confidential third-party materials where disclosure would impair commercial relationships. The harms

---

[91] *Id.* (citing *Manhattan Telecomms. Corp. v. Granite Telecomms., LLC*, 2020 WL 6799122, at *3 (Del. Ch. Nov. 19, 2020)).

[92] D.I. 546 at 21.

[93] D.I. 547, Aff. of Marlon Alvarado, ¶¶ 5–7.

[94] D.I. 547, Aff. of Marlon Alvarado, ¶ 6.

[95] *Id.* ¶ 6–7.

identified here are particularized, supported by sworn testimony, and outweigh the public's interest in the communications. Thus, the Court grants continued confidential treatment for this category.

## IV.  CONCLUSION

Both Intel and NVIDIA have demonstrated particularized competitive harms supported by affidavit evidence. In each category addressed above, the harm from disclosure clearly outweighs the diminished public interest in access. The Court therefore **GRANTS** the parties' motions for continued confidential treatment consistent with this opinion. Confidential treatment shall continue for three years from the date of this decision.

This is my final report, and exceptions may be filed under Court of Chancery Rule 144.

Respectfully submitted,

*/s/ Loren Mitchell*

Magistrate in Chancery